**Commonwealth v. Mitchell**

*Daniel S. Armagh, assistant district attorney,* for the Commonwealth.

*Charles P. Sapienza Jr.,* for defendant.

McCRACKEN, Jr. *P.J.,* July 28, 1993—The defendant was convicted before a district justice for speeding in violation of 75 Pa.C.S. §3362. He appealed to this court for a hearing de novo which resulted in a verdict of guilty. Accompanying the verdict was a memorandum opinion finding that only one of the arguments raised by the defendant at the hearing warranted discussion; specifically that the certificate of speedometer accuracy offered into evidence by the Commonwealth was inadmissible because it did not contain the two signatures referred to by the Superior Court in *Commonwealth v. Gernsheimer,* 276 Pa. Super. 418, 424, 419 A.2d 528, 530 (1980). This argument was rejected and the certificate was entered into evidence and is attached to the transcript of the hearing.

The defendant filed post-trial motions alleging that it was error to admit the certificate into evidence "when said certificate of accuracy was not signed by the person who performed the test and the engineer in charge of the testing station." This issue has been briefed and argued by both parties and, as a result, we are now in a position to re-examine the question.

We begin by observing that the evidence at issue in this case is a document that appears on its face to be issued by PennDOT entitled "Certificate of Speedometer Accuracy." The certificate contains a space for the insertion of the name of the individual or company that has conducted the test of the speedometer in question followed by the statement that this testing station has been designated by the secretary of transportation as an official testing station for speedometers used in police

vehicles to clock speeders.[1] The next line to be filled in indicates the date of the test being referred to, the make and model of the vehicle whose speedometer was tested, and the manufacturer's number and registration number of the vehicle. After this is a line to indicate the results of the speedometer test, in which the speedometer reading is compared with the true speed of the car at several points. Below this are the words, "This certificate is issued in accordance with the provisions of the Vehicle Code, §3368(b) Act of June 17, 1976, no. 81, *as amended.*"[2] Lines follow on which to insert the make, model, and serial number of the test equipment, and the number of the police equipment. Finally, there is a line for the signature of the inspector, lines for the inspector's printed name and operator number and lines for the name and address of the testing station.

The statute referred to on the form is the Act of June 17, 1976, P.L. 162, no. 81, §1, as amended, (75 Pa.C.S. §3368). The section is entitled "speed timing devices" and consists, in its present form, of five subsections. The first two subsections deal with speedometers. Subsection (a) authorizes a police officer to time the rate of speed of any vehicle on any highway using a motor vehicle equipped with a speedometer and timing the speed for not less than three-tenths of a mile. Subsection (b), which, as we have already observed, is the subsection specifically referred to on the certificate, authorizes PennDOT to ap-

---

1. At the hearing, the court took judicial notice from the *Pennsylvania Bulletin that the testing station named on the certificate, Davidheiser's Speedometer Repair, has been so designated. The propriety of this notice is not in dispute.*

2. The specific subsection referred to is entitled "testing of speedometers."

point stations for testing speedometers and to prescribe the manner of the test by regulations. It provides that a speedometer must be tested for accuracy no less than 60 days prior to the alleged violation. It then reads, "a certificate from the station showing that the test was made, the date of the test and the degree of accuracy of the speedometer shall be competent and prima facie evidence of those facts in every proceeding in which a violation of this title is charged." The three remaining subsections refer not to speedometers but to "mechanical, electrical, and electronic devices." They authorize the use of such devices, provide for the testing of these devices (just as in the case of speedometers), and impose distance requirements for their use.

We believe that the above analysis of the various subsections of section 3368 is the key to the resolution of the issue in this case. The defendant and the Commonwealth during the hearing, and this court in its memorandum opinion, were proceeding on the assumption that subsection (d) "classification, approval and testing of mechanical, electrical and electronic devices" was the applicable portion of the statute. But on examining the entire statute it now appears clear that this is not the case, and that subsection (b) "testing of speedometers" is the one that applies here. The arrangement of the subsections indicates that the General Assembly did not intend to classify speedometers along with "mechanical, electrical and electronic devices," but intended rather to treat speedometers in a separate and distinct fashion; therefore, there are two subsections dealing with speedometers alone and three subsections dealing with other speed-detecting devices. Thus, in order to determine precisely what information a certificate of speedometer accuracy must contain, we

are to look at subsection (b), which gives the requirements for the testing of speedometers, and not at subsection (d), which was not intended to refer to speedometers at all. It logically follows that, if we are to turn to the decisions of our appellate courts for further guidance, it should be the decisions interpreting section 3368(b) on which we rely and not those interpreting some other portion of the statute.

For these reasons, we now conclude that *Commonwealth v. Gernsheimer, supra* is not applicable in this case. *Gernsheimer* dealt with the use of radar, an electronic device covered by subsection (d). Referring specifically to that subsection, the Superior Court said, "We hold that ... where a radar or other electronic device is used to calibrate a defendant's speed ... the Commonwealth ... must introduce a certificate of electronic device (radar) accuracy into evidence ... [which] must be signed by the person who performed the tests and the engineer in charge of the testing station...." *Id.* at 423-24, 419 A.2d at 530. Not only does this language refer to a document (certificate of electronic device accuracy) with a different name than the document involved in this case (certificate of speedometer accuracy), but it is based on the portion of section 3368 which deals explicitly with radar and other electronic devices (and says nothing about the portion dealing with speedometers). In our memorandum opinion of January 29, 1993, we stated the language in *Gernsheimer* requiring two signatures on the certificate was dictum because the issue in the case was not how many signatures were necessary, but whether an official seal was required for the certificate to be admissible in evidence. In fact, a later Superior Court decision had interpreted *Gernsheimer* in this narrow fashion. *Com-*

*monwealth v. Denny,* 372 Pa. Super. 317, 539 A.2d 814 (1987), citing *Pew Trust,* 411 Pa. 96, 191 A.2d 399 (1963). Without repudiating that interpretation, we now conclude that, even if we assume arguendo that *Gernsheimer* did intend to impose a general requirement of two signatures for every certificate of electronic device accuracy, such a requirement does not apply to a certificate of speedometer accuracy issued under section 3368(b). It follows that subsequent decisions also dealing with radar devices and their accuracy, such as *Commonwealth v. Gussey,* 319 Pa. Super. 398, 466 A.2d 219 (1983), are equally inapplicable.

By contrast, the case law that we should be considering is that based on subsections (a) and (b) of section 3368, the speedometer portion of the statute. On examining these cases, we find no authority requiring that two signatures appear on a certificate of speedometer accuracy. *Commonwealth v. Leitzel,* 40 D.&C. 410, 412 (Snyder, 1941) holds that the certificate must be admitted or the testing official must testify to prove the accuracy of the speedometer. *Commonwealth v. McCarl,* 22 Beaver L.J. 206 (1962) holds that the speedometer must be shown to have been tested within the preceding 30 days (now 60 days). *Commonwealth v. White,* 16 Chester L. Rep. 120 (1967) holds that the testimony of the person who tested the speedometer may be offered in lieu of the certificate of accuracy. There is no indication in any case that more than one signature is needed on the certificate. And in this connection we would observe that the official form of the certificate of speedometer accuracy does not contain a place for more than one signature.

For these reasons we conclude that the certificate of speedometer accuracy was not defective for failure

to contain two signatures. The defendant's objection to its admission was therefore lacking in merit. The certificate was properly admitted and the defendant was properly convicted. His post-trial motions will be denied.

## ORDER

Now, July 28, 1993, the post-trial motions of the defendant, Jared D. Mitchell, are hereby denied.

The defendant is ordered to comply with the sentence previously imposed.